UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VINCENT COFIELD,

Plaintiff,

v.

G. SWARTHOUT, et al.,

Defendants.

No. 2:12-cv-2343-MCE-EFB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants move for summary judgment in two separate motions. ECF Nos. 46, 47. The first argues that plaintiff failed to administratively exhaust the claims asserted in this action. ECF No. 46-2. The second argues that the claims are legally meritless and that defendants are entitled to qualified immunity. ECF No. 47-2. For the following reasons, it is recommended that two of plaintiff's claims be dismissed for failure to exhaust and that summary judgment be granted on the remaining claim.

**I. The Complaint**

This case proceeds on the amended complaint filed May 8, 2013. ECF No. 17. In screening that complaint, the court concluded that plaintiff had stated cognizable claims against defendants Valencia, Long, and Buckner for retaliation in violation of the First Amendment. ECF No. 19 at 3.

Plaintiff alleges that, in 2011, defendant Valencia, a correctional counselor at plaintiff's former institution of incarceration (CSP-Solano), repeatedly refused to allow him to make his telephonic court appearances in a timely manner and refused to effect service of summons and complaints in another action plaintiff had initiated. ECF No. 17 at 4-9. Plaintiff filed a grievance to complain about Valencia's conduct. *Id.* at 7.

Plaintiff alleges that defendant Long reviewed his grievance against Valencia at the first level of review. *Id.* at 7-8. According to plaintiff, Long lied in his response to the grievance by stating that plaintiff had provided no evidence to him about one of the telephonic appearances. *Id.* Plaintiff states that Long denied the grievance and threatened to transfer plaintiff if he continued the grievance process. *Id.* at 9.

Plaintiff further claims that, on November 26, 2011, defendant Buckner, a correctional officer who worked in plaintiff's housing unit, told him to watch his back and that he had better let go of his grievances against other officers. *Id.* When plaintiff returned to his housing unit later the same day and waited in front of his cell to be let back in, Buckner refused to let him in. *Id.* Buckner unlocked the doors for all of the other inmates, but yelled at plaintiff, "I don't know where you live." *Id.* Plaintiff responded, "I am housed right here in 205 where you released me from." *Id.* After waiting in front of his cell for about half of an hour, plaintiff went to the "office" to ask "regular housing C/O Temme" what was wrong with Buckner. *Id.* Temme went to talk to Buckner, who then smiled, said "I told you," and opened the cell door. *Id.*

Buckner then prepared a Rules Violation Report ("RVR") charging plaintiff with disobeying a direct order based on the cell-door interaction. *Id.* at 10. Plaintiff alleges that Buckner lied in the report about not knowing who plaintiff was or where he lived. Plaintiff was found guilty of the violation. *Id.* Plaintiff alleges that Buckner prepared the RVR to retaliate against him for his grievances. *Id.*

Plaintiff appealed the disciplinary finding. *Id.* at 11. Defendant Long rejected the appeal, stating that plaintiff's issues were unclear, which plaintiff states is "totally untrue." *Id.*

The next year, plaintiff attended a classification committee hearing before a committee comprised of Long, Valencia, and non-party Davis. *Id.* Plaintiff's complaint that the committee

members would be biased against him because of his grievances against them was rebuffed by Long, who told plaintiff that he didn't care what plaintiff wanted and that plaintiff was "out of here." *Id.* at 11-12. The committee recommended that plaintiff be transferred and attached an "R-suffix" to his custody designation. *Id.* at 12. (An R-suffix is a custody designation assigned to inmates with a history of certain sex offenses. Cal. Code Regs. tit. 15, § 3377.1(b)). Plaintiff alleges that the committee took these steps to retaliate against him for his grievances. *Id.*

Plaintiff appealed the committee's action. *Id.*at 13. Defendant Long, acting as an appeals coordinator, rejected the grievance. *Id.* In total, Long rejected all three of plaintiff's grievances. *Id.* at 11.

Plaintiff alleges that he attempted to resolve his issues through CSP-Solano's grievance process but that the grievances were either rejected, or forwarded on without plaintiff ever receiving a response. *Id.* at 17.

**II. Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its

motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party

is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

/////

Concurrent with the motions for summary judgment, defendants advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 46-1, 47-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**III. Exhaustion**

Defendants argue that plaintiff has not exhausted any of the claims in the complaint and that they should therefore be granted summary judgment. As addressed below, the court finds that plaintiff failed to properly exhaust two of his claims but has raised a triable issue that he should be excused from exhausting the third claim, for the reasons provided below.

**A. Exhaustion Principles**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to the exhaustion requirement have been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (the purpose of the exhaustion requirement is to give officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case").

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation (CDCR Form 602), which instructs the inmate to describe the problem and outline the action requested. Title 15 of the California Code of Regulations, § 3084.2 provides further instructions. The grievance process, as defined by the regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. *See Cal. Code*

*Regs*. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id*. § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be "available," there must be the "possibility of some relief . . . ." *Booth*, 532 U.S. at 738. Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 216 (2007). To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted). Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).

If under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120, overruled on other grounds by *Albino*, 747 F.3d 1162.

/////

**B. Plaintiff's Claims**

Plaintiff asserts three claims: (1) that defendant Buckner issued a false RVR against him in retaliation for plaintiff's grievances against other correctional staff (ECF No. 17 at 9-11); (2) that defendants Valencia and Long affixed an R-suffix to plaintiff's custody designation and effected his transfer from CSP-Solano in retaliation for plaintiff's grievance against Valencia for blocking his court access (*id.* at 11-13); and (3) that defendant Long refused to process plaintiff's grievances in retaliation for plaintiff's grievance against Valencia for blocking his court access (*id.* at 7-8, 9). Defendants argue that plaintiff failed to properly exhaust all three claims. Each is addressed in turn.

**i. Plaintiff's Claim Against Long Regarding Grievances**

Plaintiff's complaint contains many allegations that defendant Long improperly handled plaintiff's appeals, by falsely claiming that plaintiff had produced no evidence to support them (ECF No. 17 at 7-8), by reviewing appeals plaintiff had filed against Long himself (*id.* at 11, 13), and by rejecting them on baseless grounds (*id.* at 9, 11, 13). In one instance, plaintiff claims that Long denied a grievance concerning his subordinate, defendant Valencia, despite the evidence plaintiff presented in support of the grievance and, in doing so, threatened to transfer plaintiff to another prison if plaintiff continued the grievance process.

Defendants present evidence that plaintiff never filed a grievance against Long for retaliating against him by improperly handling his other grievances. ECF No. 46-4, Decl. of M. Romero ISO Defs.' Mot. for Summ. J. for Failure to Exhaust ("Romero Decl.)," ¶¶ 8-15 & Exs. B & C. Plaintiff presents no evidence showing that he did, in fact, exhaust this claim. Instead, plaintiff argues broadly that the prison's failure to respond to his (unspecified) grievances made the administrative remedy unavailable and thus, presumably, he should be excused from the exhaustion requirement. ECF No. 50 at 13. He states that the three-week lag-time for institutional mail "is a systemic chronic problem to thwart inmates from filing grievances." *Id.* at 12. He also states generally that he filed many requests for interviews to the appeals coordinator to try to get his appeals logged and heard but received no response. *Id.* at 9.

/////

However, plaintiff does not state that he ever filed an appeal alleging that Long refused to process his grievances and that he faced these barriers in attempting to get the appeal heard. While plaintiff's statements, if testified to at trial, might give a factfinder reason to believe that plaintiff had experienced difficulties in getting some of his grievances heard,[1] it does not show that it would have been futile for plaintiff to attempt to grieve his claim against Long for his alleged refusal to properly process plaintiff's appeals. *Compare Rios v. Paramo*, No. 2015 U.S. Dist. LEXIS 117271, at *82-84, 2015 U.S. Dist. LEXIS 117271 (S.D. Cal. June 29, 2015) (declining to grant summary adjudication on exhaustion grounds where plaintiff swore under penalty of perjury that he had filed a grievance but received no response).

Indeed, defendants' evidence shows that plaintiff had successfully exhausted at least two grievances through the third level of review in early 2012, which undermines his assertion that the appeals system in place was entirely ineffective and thus unavailable to grieve his claim against Long. Romero Decl., Ex. A. Plaintiff has submitted no evidence upon which a reasonable factfinder could rely in reaching such a conclusion. Because plaintiff did not attempt to administratively grieve his claim that defendant Long refused to properly process his appeals, the claim must be dismissed without prejudice for failure to exhaust. *Accord, Rios*, 2015 U.S. Dist. LEXIS 117271, *86-87 (finding that plaintiff failed to exhaust a claim alleging that defendants had refused to process his grievances where he failed to file a new appeal alleging mishandling of the grievances).

/////

/////

/////

[1] Plaintiff's statements in his complaint and opposition to the summary judgment motion are not sworn under penalty of perjury. Nevertheless, at the summary judgment stage the court focuses not on whether evidence has been submitted in an admissible form but rather whether the evidence could be presented in an admissible form at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). Because plaintiff can presumably testify to his allegations under oath if the case advances to trial, the court considers those allegations in determining the propriety of summary judgment. Even treating plaintiff's statements as actual testimony, they are not sufficient to defeat summary judgment.

**ii. Plaintiff's Claim Against Buckner**

The exhibits to plaintiff's complaint contain his grievance against defendant Buckner, dated January 10, 2012. ECF No. 17 at 58-59. Plaintiff labeled the subject of his appeal as "RVR Decision" and further described his issue as:

> On 11/26/11 at approx.. 4:30 p.m. C/O Buckner 7 Building 2nd and 3rd watch officer open[ed] my cell door and said I had bulk meds. When I returned to the building after getting my bulk meds I stood in front of my cell door Cell #205 as did the other inmates who had returned for their medication pick up. C/O Buckner opened up ever[y] door around me except my door, he just stood there with this devilish grin on his face and sat down. After waiting there [illegible] minutes I walked down to the office and spoke with the regular housing deputy C/O Temme on 3rd watch, he was sitting in the office with C/O Hamlin. I asked them what was going on and why was C/O Buckner not opening my door. They both looked at me, shaking their heads and said he, C/O Buckner wants me to grab the handle on the cell door. I said are you serious! They both shrugged their shoulders and said just go stand by your door and I did. At the 5:00 count C/O Buckner opened my door and I went in. This unprofessional retaliatory behavior has been going on for several months.

*Id.* at 58-59. Plaintiff asked that "C/O Buckner refrain from his unprofessional childish ways," "be retrained in ethics and integrity for his position as a custodial officer," and "refrain from lying when he knows the truth." *Id.* at 58. Plaintiff attached to the grievance the RVR documents in which he was found guilty of disobeying Buckner's direct order. *Id.* at 58-65.

The complaint's exhibits also contain a March 20, 2012 letter from defendant Long to plaintiff in response to the appeal. *Id.* at 57. Long wrote that plaintiff's appeal was being rejected because, "Your appeal issue is obscured by pointless verbiage or voluminous unrelated documentation such that the reviewer cannot be reasonably expected to identify the issue under appeal." *Id.* Long further wrote that "the appeal does not meet the departmental threshold to be processed as a staff complaint. The appeal has been classified as a program issue; however, it is unclear if the appellant filed the appeal to contest the attached disciplinary [sic]. The appellant is directed to clarify whether he is contesting the facility program or the attached disciplinary and resubmit the appeal." *Id.*

Plaintiff alleges that Long's determination that his appeal issues were unclear was "totally untrue." *Id.* at 11. He states that he "used the grievance procedure available at Solano State Prison to try and resolve the issues . . . relating to this complaint. I got responses back saying my

grievances were rejected on 3/12/12 and 3/20/12." *Id.* at 17. Plaintiff claims that he sent the rejected grievances to the warden but received no response. *Id.* The complaint contains letters sent from plaintiff to the warden regarding two earlier appeals (dated April 11, 2011 and June 14, 2011) but none regarding the January 10, 2012 appeal concerning defendant Buckner. *Id.* at 43, 44.

The undersigned concludes that, construing the evidence presented by the parties in the light most favorable to plaintiff, defendants have shown that plaintiff did not exhaust the claim against Buckner. Plaintiff attempts to rebut this evidence by arguing that administrative remedies were not truly available in his appeal against Buckner. It is true that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. ). However, to fall within this exception to the exhaustion requirement, plaintiff must show that (1) he filed a grievance that, if pursued through all three levels, would have sufficed to exhaust the claim, and (2) prison officials screened the grievance for reasons inconsistent with or unsupported by applicable regulations. *Id.*

While plaintiff's grievance concerning Buckner likely would have sufficed to exhaust his claim against him had he pursued it, he has not shown that Long's screening of the grievance was inconsistent with or unsupported by the regulations. Plaintiff's grievance was initially routed to the "Hiring Authority" as directed by Title 15 of the California Code of Regulations, § 3084.5(b)(4) and § 3084.9(i) because it alleged misconduct by staff. *See* ECF No. 17 at 57. When the Hiring Authority determined that the appeal would not be reviewed as a staff complaint, it returned the appeal for normal processing. *Id.* Long then screened the grievance, and noted that he could not tell whether plaintiff was complaining about Buckner's allegedly unprofessional conduct in refusing to let him into his cell or whether he wished to challenge the discipline imposed on him as a result of the rules violation Buckner filed against him for allegedly refusing Buckner's order to stand in front of his door. Long cited California Code of Regulations, title 15, § 3084.6(b)(9) as the basis for the rejection of the grievance: "The appeal issue is obscured by pointless verbiage or voluminous unrelated documentation such that the

reviewer cannot be reasonably expected to identify the issue under appeal." This rejection of plaintiff's grievance was not inconsistent with nor unsupported by § 3084.6(b)(9). Plaintiff's description of his appeal indicated that he wished to challenge Buckner's conduct in not letting him into his cell. *See* ECF No. 17 at 58. But plaintiff also accused Buckner of lying, presumably in the RVR, attached the RVR and associated disciplinary action documents, and described the subject of his appeal as "RVR decision." *Id.* at 58-65. Plaintiff has not shown that Long's decision that the appeal issue was not clear is inconsistent with the regulations.

In addition, defendants' evidence shows that an administrative avenue remained open to plaintiff – he could have resubmitted the appeal as directed by Long. *Id.* at 57. Instead, plaintiff claims (without further proof) that he went outside the administrative process and raised the issue with the warden. While plaintiff claims that Long improperly rejected his grievance against Buckner, he does not provide any evidence showing that he was shut out of the administrative process after that initial rejection. Instead, the evidence shows that plaintiff elected not to pursue the grievance through the standard channels. Because plaintiff has not shown that he had no available relief through the proper channels, his claim against defendant Buckner must be dismissed without prejudice for failure to exhaust.

**iii. <u>Plaintiff's Claims Against Valencia and Long Regarding Custody Status and Transfer</u>**

Plaintiff also included as attachments to the complaint his March 6, 2012 grievance against defendants Valencia and Long. ECF No. 17 at 49, 55. Plaintiff described in those documents his grievance as:

> On 2/29/12 I went to my annual committee which has been changed twice. Last year I didn't go at all. However, at this year's committee all my due process rights were violated by CCI Valencia, and CCII Long. Long being the chair person and CCI Valencia being the recorder, CCI Davis sat in and just observed. Committee elected to put me up for an adverse transfer, then turn around and put an R-suffix in my C-file, retain me at Close A and put me up for Central California. There is sufficient evidence from which a rational person can see that CCI Valencia and CCII Long's conduct is driven by a retaliatory motive. The documents I have attached as exhibits will speak to the truth of this matter. I wrote CCI Valencia up for violation of a court order, and violation of my due process rights. CCII Long interviewed me and I presented the evidence to him – see exhibits. He denied that the documentation was sufficient to show proof even though CCI Valencia's signature is on the court document. Another court

> document where CCI Valencia elected to pass her responsibility to make the court call CCI Baker signed it and informed CCI Valencia that the case had been continued with a note showing the continued date. CCI Valencia refused to make the continuation call, Capt. Mitchell and CCI Hughes got involved and CCI Valencia finally made the call with verbal threats and accusations. One being "I" hate women. However, the R-suffix should have never been put on me with the overwhelming evidence that I have in support of my innocence. Alleged victim's statement of why she never signed a police report to date. Court documents filed, and a letter sent to the district attorney. See exhibits. There should be a proper balance between my rights to a rational decision that affect my incarceration and the prison interest in maintaining institutional safety through efficient discipline.

*Id.* Defendant Long rejected the appeal at the first level of review on March 12, 2012, stating:

> Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(6). Your appeal makes a general allegation, but fails to state facts or specify an act or decision consistent with the allegation.
>
> You originally contest the 2/29/12 Unit Classification Committee Action without providing any evidence of misconduct. Furthermore you conclude your complaint with random additional issues.

*Id.* at 48. Long's letter contained additional information in the footer:

> Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

*Id.*

Defendants argue that plaintiff did not resubmit the appeal after it was screened out, and thus it is unexhausted. Plaintiff alleges that he either "sent the appeal[] to the next level" (*id.* at 13) or sent it to the warden (*id.* at 17) but was transferred from CSP-Solano on March 26, 2012 without receiving further response. Viewed in the light most favorable to plaintiff, a reasonable factfinder could conclude from the evidence presented that defendant Long improperly screened plaintiff's grievance. Long wrote in his screening letter that plaintiff's appeal made general allegations without any support or evidence of misconduct. While plaintiff's language may not have been a model of clarity, he did allege specifically that Long and Valencia had decided to transfer him and affix an R-suffix to his custody designation to retaliate against him for his earlier appeal against Valencia. He concluded his appeal not with "random additional issues," but rather with the actual reasons why he believed the R-suffix designation was not justified.

In addition, although Long "rejected" rather than "cancelled" plaintiff's appeal, he did not "provide clear and sufficient instructions regarding further actions the inmate . . . must take to qualify the appeal for processing." Cal. Code. Regs. tit. 15, § 3084.6(a)(1). Plaintiff has raised a triable issue of material fact as to whether the grievance process was truly available for him to contest the decision by Long and Valencia to transfer him and affix an R-suffix to his custody status. *See Sapp*, 623 F.3d at 823 (holding that improper screening of a grievance renders the administrative process unavailable and exhausts the claim raised in the grievance). Accordingly, it is recommended that defendants' request to dismiss this claim as unexhausted be denied.

**IV. The Merits**

Defendants also seek summary judgment on plaintiff's claims for substantive reasons. Because the retaliation claims against Buckner and the claims against Long for alleged mishandling of the grievances must be dismissed for failure to exhaust, summary judgment as to the merits of those claims need not be addressed.[2] Thus, only the merits of plaintiff's claim that Long and Valencia retaliated against him by affixing the custody classification suffix and effecting his transfer remain.

To succeed on his claim of retaliation against defendants Long and Valencia, plaintiff must show five elements: (1) that a state actor took some adverse action against him (2) because of (3) his protected conduct, (4) that such action chilled his exercise of his First Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff need not demonstrate that his speech was actually inhibited or suppressed, but merely that the defendant's conduct was such as would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568-69. Conduct protected by the First Amendment includes communications that are "part of the grievance process." *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).

---

[2] For the same reason, the court need not address plaintiff's request for additional discovery regarding the merits of his claim against Buckner. ECF No. 50 at 4 ("Plaintiff asserts that additional discovery is needed for sworn declarations from former cellmate, witnesses, and admissions from the two floor officers who actually witnessed the incident" between plaintiff and Buckner.).

Defendants argue that plaintiff's claim that Long and Valencia unconstitutionally retaliated against him by transferring him and affixing an R-suffix to his custody status fails because the evidence shows no dispute that these decisions advanced legitimate correctional goals. They have presented evidence supporting the following facts, which plaintiff has failed to refute with his own evidence:

Plaintiff arrived at California State Prison, Solano ("CSP-Solano") on or about November 18, 2009. ECF No. 47-3, Defs.' Stmt. of Undisputed Facts ISO Mot. for Summ. J. (hereinafter "DUF") No. 2. Prior to his incarceration, plaintiff was charged with several crimes, including violations of Penal Code §§ 261(a)(1) (rape of a person who cannot give legal consent due to disability), 261(a)(2) (rape by means of force or duress), and 288a(c) (oral copulation of a person under 14 or more than 10 years younger than the defendant). DUF 3. Plaintiff's initial Unit Classification Committee ("UCC") hearing at CSP-Solano occurred on November 25, 2009. DUF 4. Both defendants Valencia and Long served on that committee. DUF 5. The committee felt that an R-suffix should be attached to plaintiff's custody designation based on information in the police reports and probation reports. DUF 5. The committee elected to wait until it had received the district attorney's comments, however, before affixing the suffix. DUF 6. Prior to the hearing, neither defendant had met plaintiff. DUF 7, 8.

Plaintiff's second UCC hearing occurred on November 10, 2010. DUF 9. Defendant Valencia participated on the committee. DUF 10. The committee again considered affixing an R-suffix but again elected to wait for the district attorney's comments, which it had not yet received. DUF 10, 11. By plaintiff's third UCC hearing, on February 29, 2012, the committee (which included Long and Valencia) had received the district attorney's comments and elected to place the R-suffix on plaintiff's custody status. DUF 12, 13.

According to defendants, the decision to place the R-suffix was based on information in the police and probation reports and the district attorney's comments. DUF 14. Plaintiff contends that the decision was premised on a retaliatory motive and was illegal because he has no history of the crimes listed in California Penal Code § 290.

/////

California Code of Regulations, title 15, § 3377.1(b) provides that "[a]n 'R' suffix shall be affixed to an inmate's custody designation to ensure the safety of inmates, correctional personnel, and the general public by identifying inmates who have a history of specific sex offenses as outlined in Penal Code Section 290." Section 290, in turn lists a variety of offenses, including violation of §§ 261 and 288a. Under § 3377.1(b), the UCC may affix the R-suffix to inmates with records of arrest, detention, or charge of the § 290 offenses. In evaluating whether to attach the suffix, the committee is directed to consider arrest reports and district attorney comments. Cal. Code Regs. tit. 15, § 3377.1(b)(5).

Plaintiff disputes the evidence on which the § 290 charges against him were based, claiming that a "disgruntled ex-girlfriend" had been "goaded by the police" to report that he had assaulted and raped her. Without any supporting evidence, plaintiff asserts that the district attorney's comments were "illegal." Plaintiff notes that he had been at prior institutions where no suffix had been attached.

The defendants' evidence shows a legitimate penological justification for affixing an R-suffix to plaintiff's custody designation. While plaintiff may dispute the legitimacy of the charges made against him, he was charged with violating laws listed in Penal Code § 290, and the undisputed evidence shows that defendants' conduct was consistent with the regulations.

Defendants also argue that their decision to recommend plaintiff's transfer was premised on the legitimate correctional goal of institutional security based on plaintiff's repeated violation of prison rules regarding cell-phone possession. DUF 17. They present evidence of the following facts, again undisputed by plaintiff. Plaintiff was found guilty of possession of a cell phone on September 28, 2010. ECF No. 47-4 at 11-12 (Decl. of Joseph Wheeler ISO Defs.' Mot. for Summ. Jt., Ex. B). Plaintiff was again found guilty of possessing a cell phone on May 12, 2011. *Id.* at 15-16. Plaintiff sustained a third rules violation on September 24, 2011 for cell phone possession. *Id.* at 19-20.

Plaintiff provides no evidence that the prison lacked a legitimate reason for transferring him based on his demonstrated ability to obtain illicit cell phones. Accordingly, he has not raised a triable issue of material fact that defendants' decisions to affix an R-suffix to his custody status

and his transfer did not advance a legitimate penological goal. Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claims premised on those facts.[3]

## V. Conclusion and Recommendation

For the foregoing reasons, it is recommended that:

1. Defendants' motion for summary judgment for failure to exhaust administrative remedies (ECF No. 46) be granted in part as to plaintiff's claim against Buckner and plaintiff's claim against Long based on mis-handling of grievances, and otherwise denied.
2. Plaintiff's unexhausted claims against Buckner and Long be dismissed without prejudice.
3. Defendants' motion for summary judgment on the merits (ECF No. 47) be granted in part as to plaintiff's claims against Long and Valencia premised on their decisions as members of plaintiff's Unit Classification Committee, and otherwise denied.
4. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 25, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

[3] Defendants also argue that they are entitled to qualified immunity. Because plaintiffs' claims fail for the other reasons discussed above, the court does not reach this argument.